IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| HEIDI REAMS | ) | CASE NO. |
| 26762 Pemberville Road | ) | |
| Perrysburg, Ohio 43551 | ) | JUDGE: |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **COMPLAINT FOR DAMAGES** |
| | ) | **AND REINSTATEMENT** |
| INTERNATIONAL UNION OF | ) | |
| OPERATING ENGINEERS | ) | **(Jury Demand Endorsed Herein)** |
| c/o Intl Union of Operating Eng. | ) | |
| 1125 17th Street, NW | ) | |
| Washington, DC 20036 | ) | |
| | ) | |
| -and- | ) | |
| | ) | |
| BRETT LAFASO | ) | |
| 7308 Jeffers Road | ) | |
| Whitehouse, Ohio 43571 | ) | |
| | ) | |
| Defendants. | ) | |

Plaintiff, Heidi Reams, by and through undersigned counsel, as her Complaint against the Defendants, states and avers the following:

## **PARTIES**

1. Reams is a resident of the city of Perrysburg, county of Wood, state of Ohio.

2. International Union of Operating Engineers dba IUOE Local 18 ("IUOE") is a labor organization that owns and/or operates a business in the state of Ohio located at 2412 South Reynolds Road, Toledo, Ohio 43614.

3. LaFaso was at all times hereinafter mentioned, an individual who was a manager and/or supervisor at IUOE who acted directly or indirectly in the interest of IUOE.

1

4. Upon information and belief, LaFaso is a resident of the city of Whitehouse, county of Lucas, state of Ohio.

5. LaFaso was at all times hereinafter mentioned an employer within the meaning of R.C. § 4112.01 *et seq*.

## JURISDICTION & VENUE

6. This Court had federal question subject matter jurisdiction pursuant to 28 U.S.C. § 1331 as Reams is alleging federal law claims under the Americans with Disabilities Act of 1990 as amended. 42 U.S.C. § 12101 et seq., Americans with Disabilities Act, ("ADA").

7. This Court has personal jurisdiction over IUOE because it is a company that is registered to conduct business in this District, and at all times material to the allegations contained herein, conducted substantial business in this District and had sufficient minimum contacts within this District.

8. This Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367 over Reams' Ohio Law claims because those claims derive from the same common core of operative facts and are so closely related to her federal law claims that they form part of the same case or controversy under Article III of the United States Constitution.

9. All material events alleged in this Complaint occurred in Lucas County.

10. Within 300 days of the conduct alleged below, Reams filed a Charge of Discrimination with the Equal Opportunity Employment Commission ("EEOC"), Charge No. 532-2020-01898 against Defendant.

11. On or about February 8, 2021, the EEOC issued and mailed a Notice of Right to Sue letter to Reams regarding the Charge of Discrimination.

12. Reams received her Right to Sue letter from the EEOC in accordance with 42 U.S.C. § 2000e-5(f)(1), which has been attached hereto as Plaintiff's Exhibit 1.

13. Reams filed this Complaint within 90 days of the issuance of the Notice of Right to Sue letter.

14. Reams has properly exhausted her administrative remedies pursuant to 29 C.F.R. § 1614.407(b).

15. Venue is properly placed in the United States District Court for the Northern District of Ohio, Western Division, pursuant to 28 U.S.C.§ 1391, because it is the district court of the district, division, and county within which Defendants operated and where a substantial part of the events or omissions giving rise to the claim occurred.

## **FACTS**

16. Reams is a former employee of IUOE.

17. IUOE hired Reams as a Clerk in or around January 2016.

18. Reams was an employee in good standing with no history of legitimate discipline at the time of her termination from her employment with Defendants.

19. On or around July 28, 2019, Reams suffered a torn Carotid Artery and was hospitalized.

20. A torn Carotid Artery can lead to a stroke if not treated immediately.

21. Reams immediately disclosed to Defendants that she had been diagnosed with a torn Carotid Artery and was hospitalized.

22. As a result of suffering from a torn Carotid Artery, Reams experiences symptoms that can periodically affect her brain and cause blood clots and decreased blood flow leading to a stroke among other related symptoms ("Medical Condition").

23. Reams' Medical Condition constituted a disability.

24. Reams is and was disabled within the meaning of R.C. § 4112.01 *et seq*.

25. Reams' Medical Condition constituted a physical impairment.

26. Reams' Medical Condition substantially limited one or more of her major life activities including working.

27. In the alternative, Defendants perceived Reams as being disabled.

28. In the alternative, Defendants perceived Reams' Medical Condition to constitute a physical impairment.

29. In the alternative, Defendants perceived that Reams' Medical Condition substantially limited one or more of her major life activities including working.

30. Despite this actual or perceived disabling condition, Reams was still able to perform the essential functions of her job.

31. On or about July 28, 2019, Reams notified IUOE of her Medical Condition and hospitalization and asked for time off work. ("First Request for Accommodation")

32. Reams First Request for Accommodation was reasonable.

33. Reams' First Request for Accommodation did not cause an undue hardship on Defendants.

34. Defendants did not determine if Reams' First Request for Accommodation would cause an undue hardship.

35. Defendants have no contemporaneously created documents reflecting any effort to determine if Reams' First Request for Accommodation would cause an undue hardship.

36. After the First Request for Accommodation, no one at IUOE engaged Reams in an interactive discussion to find a reasonable accommodation for Reams' disability.

37. Defendants violated R.C. 4112.01 et seq. when they failed to engage in an interactive process to find a reasonable accommodation for Reams' disability.

38. Reams requested paperwork for medical leave from IUOE.

39. On or about July 29, 2019, Ismael Gutierrez Jr. informed Reams that she could not get medical leave paperwork until Reams' doctors provided IUOE with a return-to-work date.

40. On or about July 29, 2019, LaFaso contacted Reams in the hospital to ask about a cash overage in IUOE's cash drawer.

41. Reams reminded LaFaso that she was in the hospital did not have the accounting information in front of her to discuss individual transactions.

42. LaFaso told Reams that the cash drawer had approximately $40.00 too much cash and was missing the accompanying receipt.

43. On or about July 30, 2019, Reams received a phone call from an IUOE Dispatcher, Kim Roberts, who told Reams that LaFaso was looking through her desk for a reason to terminate Reams.

44. On or about August 5, 2019, Reams contacted Kathy Allen, Office Manager at IUOE, to discuss Reams' return to work date scheduled for August 19, 2019.

45. Reams updated Allen with her return-to-work date as a condition to get the necessary paperwork for medical leave. ("Second Request for Accommodation")

46. Allen told Reams that if she took time off she would not get paid.

47. Reams told Allen that her Medical Conditions were serious, and that Reams' doctors advised her not to return to work before August 19, 2019.

48. On or about August 19, 2019, Reams returned to work.

49. After Reams' return to work, LaFaso told Reams to identify a particular cash transaction from July 26, 2019, including the IUOE employee involved in the transaction.

5

50. Reams is not the only IUOE employee who writes receipts or accepts cash payments from members.

51. IUOE clerks and dispatchers regularly take cash payments and issue receipts.

52. Reams could not identify who was involved with the July 26, 2019 cash transaction.

53. LaFaso could not identify who was involved with the July 26, 2019 cash transaction.

54. IUOE terminated Reams' employment on August 20, 2019, only two days after Reams returned to work from a serious Medical Condition.

55. IUOE terminated Reams' employment after she requested a reasonable accommodation related to her Medical Condition.

56. According to Defendants, Reams was terminated because the cash drawer had approximately $40.00 too much cash and was missing a receipt for the cash transaction ("Stated Basis for Termination").

57. Defendants' Stated Basis for Termination has no basis in fact.

58. Defendants' Stated Basis for Termination did not actually motivate the termination.

59. Defendants' Stated Basis for Termination was insufficient to motivate the termination.

60. Defendants' assertion of the Stated Basis for Termination was pretext to terminate Reams.

61. Defendants did not terminate similarly situated non-disabled employees for similar conduct they claimed to terminate Reams for.

62. Defendants terminated Reams because she is disabled.

63. Defendants terminated Reams because it perceived her as disabled.

64. Defendants terminated Reams in retaliation for asking for medical leave as a reasonable accommodation.

65. Before August 20, 2019, Reams had no meaningful history of disciplinary action.

66. Defendants' decision to skip progressive disciplinary steps for Reams is an adverse employment action.

67. Defendants' decision to skip progressive disciplinary steps for Reams is an adverse action.

68. LaFaso told Reams it was unfortunate that they had to fire her with all the medical conditions she was dealing with.

69. Reams was only months away from having her full pension vested.

70. On or about September 23, 2019, Reams applied to IUOE to work as a union member in order to save her pension.

71. IUOE told Reams that her return-to-work release letter was insufficient, and that Reams would need a new medical release that stated Reams "can operate heavy equipment in a safety sensitive environment without restrictions."

72. On or about September 26, 2019, Reams provided a new medical release to Dispatcher Kim Roberts pursuant to IUOE's instructions.

73. Reams' medical release stated, "It is my medical opinion that Heidi Reams may return to work without any restrictions. Heidi Reams is also able to operate heavy equipment in a safety sensitive environment."

74. Roberts told Reams that the medical release was sufficient and time stamped Reams' medical release.

75. Roberts was processing Reams' paperwork when LaFaso ordered Roberts to stop processing Reams' application.

76. LaFaso grabbed Reams' medical release and told Reams that the medical release was insufficient because Reams' doctor used two sentences instead of only one.

77. LaFaso told Reams she would not be able to work as a union member.

78. Reams told LaFaso that she thought his actions were retaliation for her Medical Conditions and unlawful termination on August 20, 2019.

79. LaFaso again refused to accept Reams' application to work as a union member.

80. LaFaso prevented Reams from applying as a union member specifically because of her disability.

81. LaFaso prevented Reams from applying for work as a union member specifically because LaFaso perceived Reams as disabled.

82. There was a causal connection between Reams' use of medical leave and Defendants' adverse actions against Reams, including issuing unwarranted discipline, denying Reams' application to work as a union member, and/or terminating Reams' employment.

83. There was a causal connection between Reams' disability and Defendants' adverse actions against Reams, including issuing unwarranted discipline, denying Reams' application to work as a union member, and/or terminating Reams' employment.

84. The above facts demonstrate that Defendants engaged in a pattern and practice of disability discrimination.

85. As a result of being wrongfully terminated, Reams has suffered and will continue to suffer damages.

86. Reams suffered emotional distress as a result of Defendants' conduct, and is entitled emotional distress damages pursuant to R.C. § 4112.01 *et seq*.

## COUNT I: DISABILITY DISCRIMINATION IN VIOLATION OF THE ADA
### (Against Defendant IUOE Only)

87. Reams restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

88. Reams suffers from a torn Carotid Artery.

89. Reams is disabled.

90. In the alternative, Defendants perceived Reams as being disabled.

91. Reams' Medical Condition constituted a physical impairment.

92. Reams' Medical Condition substantially limited one or more of her major life activities including working.

93. IUOE perceived Reams' Medical Condition to substantially limit one or more of her major life activities including working.

94. Reams requested a reasonable accommodation related to her Medical Condition.

95. IUOE treated Reams differently than other similarly situated employees based on her disability.

96. IUOE treated Reams differently than other similarly situated employees based on her perceived disability.

97. On or about August 20, 2019, IUOE terminated Reams' employment without just cause.

98. IUOE terminated Reams' employment based her disability.

99. IUOE terminated Reams' employment based on her perceived disability.

100. On or about September 26, 2019, IUOE refused to allow Reams to apply for open positions for which she was qualified based on her disability.

101. On or about September 26, 2019, IUOE refused to allow Reams to apply for open positions for which she was qualified based on her perceived disability.

102. IUOE violated the ADA when it discharged Reams based on her disability.

103. IUOE violated the ADA when it discharged Reams based on her perceived disability.

104. IUOE violated the ADA when it failed to engage Reams in an interactive discussion about reasonable accommodations.

105. IUOE violated the ADA when it denied Reams' request for a reasonable accommodation.

106. IUOE violated the ADA when it retaliated against Reams' based on her request for a reasonable accommodation.

107. IUOE violated the ADA when it refused to allow Reams to apply for open positions for which she was qualified based on her disability.

108. IUOE violated the ADA when it refused to allow Reams to apply for open positions for which she was qualified based on her perceived disability.

109. As a direct and proximate result of IUOE's conduct, Reams suffered and will continue to suffer damages.

### COUNT II: DISABILITY DISCRIMINATION IN VIOLATION OF R.C. § 4112.01 *et seq.*
**(Against All Defendants)**

110. Reams restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

111. Reams suffers from a torn Carotid Artery.

112. Reams is disabled.

113. In the alternative, Defendants perceived Reams as being disabled.

114. Reams' Medical Condition constituted a physical impairment.

115. Reams' Medical Condition substantially limited one or more of her major life activities including working.

116. Defendants perceived Reams' Medical Condition to substantially limit one or more of her major life activities including working.

117. Reams requested a reasonable accommodation related to her Medical Condition.

118. Defendants failed to engage Reams in an interactive discussion about reasonable accommodations.

119. Defendants denied Reams' request for a reasonable accommodation.

120. IUOE retaliated against Reams based on her request for a reasonable accommodation.

121. Defendants treated Reams differently than other similarly situated employees based on her disabling condition.

122. Defendants treated Reams differently than other similarly situated employees based on her perceived disabling condition.

123. On or about August 20, 2019, Defendants terminated Reams' employment without just cause.

124. Defendants terminated Reams' employment based her disability.

125. Defendants terminated Reams' employment based on her perceived disability.

126. On or about September 26, 2019, Defendants refused to allow Reams to apply for open positions for which she was qualified based on her disabling condition.

127. On or about September 26, 2019, Defendants refused to allow Reams to apply for open positions for which she was qualified based on her perceived disabling condition.

128. Defendants violated R.C. § 4112.01 *et seq.* by discriminating against Reams based on her disabling condition.

129. Defendants violated R.C. § 4112.01 *et seq.* by discriminating against Reams based on her perceived disabling condition.

130. Defendants violated R.C. 4112.01 et seq. when they failed to engage Reams in an interactive process to find a reasonable accommodation for Reams' disability.

131. Defendants violated R.C. § 4112.01 *et seq.* by using Reams' disability as a factor when evaluating her ability to work.

132. Defendants violated R.C. § 4112.01 *et seq.* when it discharged Reams based on her disability.

133. Defendants violated R.C. § 4112.01 *et seq.* when it discharged Reams based on her perceived disability.

134. Defendants violated R.C. § 4112.01 *et seq.* when it refused to consider Reams for employment based on her disability.

135. Defendants violated R.C. § 4112.01 *et seq.* when it refused to consider Reams for employment based on her perceived disability.

136. Reams suffered emotional distress as a result of Defendants' conduct, and is entitled emotional distress damages pursuant to R.C. § 4112.01 *et seq*.

137. As a direct and proximate result of Defendants' conduct, Reams suffered and will continue to suffer damages.

## DEMAND FOR RELIEF

WHEREFORE, Heidi Reams demands from Defendants the following:

(a) Issue an order requiring IUOE to restore Reams to one of the positions to which she was entitled by virtue of her application and qualifications, and expunge her personnel file of all negative documentation;

(b) An award against each Defendant of compensatory and monetary damages to compensate Reams for lost wages, emotional distress, liquidated damages, and other consequential damages, in an amount in excess of $25,000 per claim to be proven at trial;

(c) An award of punitive damages against each Defendant in an amount in excess of $25,000;

(d) An award of reasonable attorney's fees and non-taxable costs for Reams claims as allowable under law;

(e) An award of the taxable costs of this action; and

(f) An award of such other relief as this Court may deem necessary and proper.

Respectfully submitted,

*/s/ Fred M. Bean*

Fred M. Bean (0086756)
Taurean J. Shattuck (0097364)
David E. Byrnes (0086975)
**THE SPITZ LAW FIRM, LLC**
25200 Chagrin Boulevard, Suite 200
Beachwood, OH 44122
Phone: (216) 291-4744
Fax:   (216) 291-5744
Email:  Fred.Bean@spitzlawfirm.com
           Taurean.Shattuck@spitzlawfirm.com
           David.Byrnes@spitzlawfirm.com

*Attorneys For Plaintiff Heidi Reams*

## JURY DEMAND

Plaintiff Heidi Reams demands a trial by jury by the maximum number of jurors permitted.

*/s/ Fred M. Bean*

Fred M. Bean (0086756)
**THE SPITZ LAW FIRM, LLC**