IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

**HEIDI REAMS,**                                             CASE NO. 3:21 CV 878

      Plaintiff,

      v.                                                    JUDGE JAMES R. KNEPP II

**LOCAL 18, INTERNATIONAL
UNION OF OPERATING ENGINEERS,**

      Defendant.                                    **MEMORANDUM OPINION AND
ORDER**

## INTRODUCTION

In this matter, Plaintiff Heidi Reams brings state and federal law disability discrimination claims against Defendant Local 18, International Union of Operating Engineers. (Doc. 12). Pending before the Court is Defendant's partial motion to dismiss.[1] (Doc. 13). Plaintiff opposed the motion (Doc. 14), and Defendant replied (Doc. 15). For the following reasons, the Court denies Defendant's motion.

## BACKGROUND[2]

Plaintiff's claims are supported by two related but distinct sets of facts. Plaintiff worked as a clerk, an at-will position, for Defendant. (Doc. 12, at ¶¶ 13-15). A medical condition kept her out of work, and she was fired shortly after returning from work. *See generally id.* at ¶¶ 16-66. These facts are not put in issue by Defendant's motion.

---

1. Though not captioned as such, Defendant's motion attacks only one aspect of Plaintiff's state law claim, leaving undisturbed the remainder of her claims.
2. The Court is required to accept the allegations stated in the complaint as true, while viewing the complaint in a light most favorable to the plaintiff. *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984)

Plaintiff's pension was "months away" from fully vesting when Defendant terminated her employment. *Id.* at ¶ 67. She sought work as a union member "in order to save her pension." *Id.* at ¶ 68. Defendant operates a hiring hall, referring union members to employers. (Doc. 13-1, at 12-16). Plaintiff provided Defendant with a medical release that lifted all restrictions and said she could "operate heavy equipment in a safety sensitive environment." *Id.* at ¶¶ 70-71. One of Defendant's managers prevented Plaintiff's application from being processed by grabbing the medical release, telling Plaintiff her release was insufficient, and that she could not work as a union member. *Id.* at ¶¶ 73-79.

Defendant filed a motion to dismiss attacking the state law claim stemming from Plaintiff's attempt to work as a union member. (Doc. 13). It argues the claim is preempted by federal labor law. *Id.* at 1. Defendant's motion initially attacked both collections of facts. *Id.* ("Plaintiff Heidi Reams alleges that the union discriminated against her…when it: (1) terminated her employment; and (2) refused to process her application to the Union's hiring hall …These claims all fail as a matter of law because they are completely preempted…"). But its reply abandons the attack on claims stemming from Plaintiff's termination. (Doc. 15, at 3) ("Here, the Union's Motion seeks the dismissal of all of Plaintiff's § 4112 claims related to Reams attempt to work through the Union's hiring hall under two theories of federal preemption.").

### STANDARD OF REVIEW

When deciding a motion to dismiss under Federal Civil Rule 12(b)(6), the Court tests the complaint's legal sufficiency. The Court is required to accept the allegations stated in the complaint as true, while viewing the complaint in a light most favorable to the plaintiff. *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984); *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974); *Westlake v. Lucas*, 537 F.2d 857, 858 (6th Cir. 1976).

Defendant bears the burden of showing Plaintiff's claim is preempted. *Int'l Longshoremen's Ass'n, AFL-CIO v. Davis*, 476 U.S. 380, 394-95 (1986).

## DISCUSSION

Defendant argues Plaintiff's state-law discrimination claim is preempted under two different theories. (Doc. 13, at 6-16). First, Defendant argues Section 301 of the Labor Management Relations Act ("LMRA") preempts Plaintiff's claim because it necessarily requires interpreting a collective bargaining agreement. *Id.* at 6-12. Second, Defendant argues *Garmon* preemption also bars Plaintiff's claim. *Id.* at 12-16. For the following reasons, the Court finds Defendant has not met its burden to show either theory of preemption bars Plaintiff's state-law discrimination claim.

<u>Section 301 Preemption</u>

Section 301 of the LMRA displaces any state-law cause of action for violation of a contract between a labor organization and an employer. *Caterpillar Inc. v. Williams*, 482 U.S. 386, 394 (1987). "Section 301 governs claims founded directly on rights created by collective-bargaining agreements, and also claims substantially dependent on analysis of a collective-bargaining agreement." *Id.* Its preemptive force reaches state-law tort claims when an "essential element of the tort . . . require[s] interpretation of the labor agreement". *Smolarek v. Chrysler Corp.*, 879 F.2d 1326, 1330 (6th Cir. 1989).

But tort claims independent of a collective bargaining agreement are not preempted. *Mattis v. Massman*, 355 F.3d 902, 905 (6th Cir. 2004). A claim is independent if it does not require interpreting the terms of the collective bargaining agreement, and if the right claimed was created by state law rather than the collective bargaining agreement. *Id.* at 906 ("In short, if a state-law

claim fails either of these two requirements, it is preempted by § 301."). The Court examines each prong of the preemption standard in turn.

*Contract Interpretation*

Defendant argues Plaintiff's claim requires direct interpretation of some unspecified provision of the collective bargaining agreement. (Doc. 13, at 8-10). But, looking at the elements of Plaintiff's claim, it becomes clear she has brought an independent claim.

Plaintiff claims she was barred from applying for employment as a union member because of her disability. (Doc. 12, at ¶¶ 73-80). Under Ohio law, it is an unlawful discriminatory practice for any employer to refuse to hire or otherwise discriminate against a person because of her disability. Ohio Rev. Code § 4112.02(A). "In order to prevail in an employment discrimination case, the plaintiff must prove discriminatory intent." *Mauzy v. Kelly Servs., Inc.*, 75 Ohio St. 3d 578, 583 (1996). Plaintiff must also show "a link or nexus between the discriminatory statement or conduct and the prohibited act of discrimination". *Byrnes v. LCI Commc'n Holdings Co.*, 77 Ohio St. 3d 125, 130 (1996). Only in the absence of direct evidence of discrimination do the familiar *McDonnell Douglas* factors become relevant. *Kohmescher v. Kroger Co.*, 61 Ohio St. 3d 501 (1991).

These elements do not require the Court to interpret the collective bargaining agreement. Defendant argues the "only way for the Court to determine whether Plaintiff was entitled to work as a 'union member' or otherwise participate in the Hiring Hall is by reviewing and enforcing the Hiring Hall rules regarding working as a Union member and participation in the Hiring Hall." (Doc. 13, at 9). Notably, Defendant does not identify any contractual provision which this Court will need to interpret to evaluate Plaintiff's claim. *See Guidry v. Marine Engineers' Beneficial Ass'n*, 2007 WL 707511, at *6 (N.D. Cal.) ("Although MEBA asserts in conclusory fashion that

adjudication of the state-law claim would require the Court 'to analyze . . . contractual provisions,' it has failed to identify any contractual provision whose meaning is disputed. Nor apparently could it do so, for Plaintiff's right to be free from retaliatory action, which was conferred by the California legislature via FEHA, does not depend on Plaintiff's contract with MEBA and could not be abrogated by it."). Plaintiff's well-pled allegation is that Defendant prevented her from applying for work, and thereby necessarily refused to hire her[3], because of her disability. (Doc. 12, at ¶¶ 70-79). That allegation, alone, alleges Plaintiff's *prima facie* case under the direct evidence standard. "Direct evidence is evidence which, if believed, proves the existence of improper discrimination animus without inference or presumption." *Shaw v. Access Ohio*, 118 N.E.3d 351, 358 (Ohio Ct. App. 2018). Here, Plaintiff alleges she was unable to apply for a job with Defendant because Defendant's manager physically blocked her from applying. (Doc. 12, at ¶ 74). And the manager did so, according to Plaintiff's allegation, because he believed she was disabled. *Id.* at ¶¶ 76-78. No inference is required to connect the alleged adverse action to the requisite discriminatory intent. That is, taking Plaintiff's account as true, she has pled allegations which satisfy the direct evidence standard for proving disability discrimination, and that *prima facie* case is made without reference to or interpretation of any collective bargaining agreement provision.

---

3. Interpreting other anti-discrimination law, persuasive authority supports finding Defendant preventing Plaintiff from applying for employment is an adverse employment action. *Robinson v. Montgomery Ward & Co.*, 823 F.2d 793, 796 (4th Cir. 1987) ("Although a plaintiff who did not apply for a position is not foreclosed from success in an employment discrimination action, in such a situation the plaintiff must establish that she was inhibited from applying because of the employer's discriminatory practices."). This is a natural, logical extension of a statute forbidding employers from refusing to hire for discriminatory reasons. Ohio Rev. Code. § 4112.02(A) ("It shall be an unlawful discriminatory practice…[f]or any employer, because of…disability…to refuse to hire…").

Defendant begins to raise various defenses to that *prima facie* case in its briefing, including that it properly sought medical clearance from Plaintiff, and that she may not have been entitled to work as a union member. (Doc. 13, at 9). But these defenses rebut or contradict Plaintiff's case – they are not elements she has to prove herself. "It is irrelevant to the preemption question whether or not the employer can defend by showing it had the right under the collective bargaining agreement to do what it did." *O'Shea v. Detroit News*, 887 F.2d 683, 687 (6th Cir. 1989). Those defenses remain available at later stages of the litigation, but Defendant's argument that they intend to make this Court interpret the collective bargaining agreement to its advantage does not bar Plaintiff from bringing her claim that, on its face, has nothing to do with any provision of that agreement.

Defendant argues a Southern District of Iowa case supports their argument that state law discrimination claims are preempted by federal labor law. (Doc. 13, at 10-12) (citing *Pitts v. Steamfitters Local Union No. 33*, 718 F. Supp. 2d 1010, 1014 (S.D. Iowa 2010)). But that case is distinguishable, and does not advance Defendant's argument. The plaintiff in *Pitts* was already in the union, and she alleged the union refused to refer her specific employment opportunities. 718 F. Supp. 2d at 1015-16. The court held determining whether an adverse employment action occurred at all required interpreting the collective bargaining agreement. *Id.* at 1016. Here, the Court does not have to interpret the collective bargaining agreement to determine whether Plaintiff suffered an adverse action – she was not hired, and Defendant prevented her from even applying, easily satisfying that element of her claim. *See* Ohio Rev. Code § 4112.02(A). Further, the Iowa court applied the *McDonnell Douglas* framework in its analysis, whereas here Plaintiff appears to have alleged a claim under the direct evidence standard. (Doc. 12, at ¶¶ 70-79). This makes the elements of the *prima facie* case different, as Plaintiff has less work to do in dismissing alternative

explanations and motivations for Defendant's actions. *Mauzy*, 75 Ohio St. 3d at 583 ("The function of the *McDonnell Douglas* prima facie test is to allow the plaintiff to raise an inference of discriminatory intent indirectly. It serves to eliminate the most common nondiscriminatory reasons for the employer's action: lack of qualifications or the absence of a vacancy."). In this case, as discussed above, Defendant's argument that it had a right to do what it did is a defense, rather than a nondiscriminatory reason Plaintiff must disprove as part of her *prima facie* case. As such it cannot be the basis for preempting Plaintiff's claim. Therefore, Defendant has not met its burden to show the claim is preempted.

*Source of Right*

A state law claim may also be preempted when a collective bargaining agreement creates the right a plaintiff seeks to enforce. *Mattis*, 355 F.3d at 905. Defendant argues Plaintiff's claim is dependent upon rights created by the collective bargaining agreement. *See* Doc. 13, at 12 ("Even when assigning all reasonable inferences in Reams' favor, Reams' Complaint makes clear that the rights or benefits at issue – 'to work as a union member' – all emanate from the CBA."). But Plaintiff, as discussed above, does not need to prove she had a right to work as a union member. She must prove Defendant did not hire her, and prevented her from applying, because of her disability. *See Byrnes*, 77 Ohio St. 3d. at 130 ("[I]n a cause of action for age discrimination under R.C. 4112.02 or 4112.14, when relying upon the direct evidence standard…an employee must prove a causal link or nexus between evidence of a discriminatory statement or conduct and the prohibited act of discrimination to establish a violation."). Indeed, Defendant's proffered case law demonstrates how this case is not based on rights emanating from a collective bargaining agreement. (Doc. 15, at 8). The Sixth Circuit held a nonunion employee's lawsuit, alleging the union deprived him of membership, "the opportunity to work in his trade, and the benefits of a

pension system into which he had paid the required contributions", was based in the collective bargaining agreement and thus within the scope of Section 301. *Hill v. Iron Workers Loc. Union No. 25*, 520 F.2d 40, 41-42 (6th Cir. 1975). Defendant tries to connect these contract claims to Plaintiff's tort claim, but the analogy fails – for example, that Plaintiff sought employment with Defendant to preserve her nearly-vested pension does not mean she is suing to enforce a contractual right to a pension like the *Hill* plaintiff did. That is, Plaintiff's personal motivations for applying for work with Defendant do not transform the nature of the claim from a tort to a breach of contract claim. Plaintiff's right to be considered for employment free from invidious disability discrimination plainly emanates from Ohio statutory law, not the collective bargaining agreement. *See* Ohio Rev. Code § 4112.02(A). The case law presented by Defendant does not persuade this Court otherwise.

Therefore, for the reasons discussed above, Defendant has not met its burden to show Section 301 preempts Plaintiff's state law disability claim.

*Garmon* Preemption

Defendant also argues *Garmon* preemption bars Plaintiff's state law disability claim. "When an activity is arguably subject to § 7 or § 8 of the [National Labor Relation] Act, the States as well as the federal courts must defer to the exclusive competence of the National Labor Relations Board if the danger of state interference with national policy is to be averted." *San Diego Bldg. Trades Council, Millmen's Union, Loc. 2020 v. Garmon*, 359 U.S. 236, 245 (1959). Defendant argues Plaintiff's claim is, in substance, a claim of breach of Defendant's duty of fair representation, which is rooted in Section Nine of the National Labor Relations Act. (Doc. 13, at 13) As an initial matter, the Court notes *Garmon* preemption does not reach claims related to the duty of fair representation:

> Plaintiff mischaracterizes this latter preemption argument as involving *Garmon* preemption, see *San Diego Building Trades Council v. Garmon*, 359 U.S. 236, 79 S.Ct. 773, 3 L.Ed.2d 775 (1959). *Garmon* preemption concerns federal protection of the primary jurisdiction of the National Labor Relations Board. In *Garmon*, the Supreme Court held that "[when an activity is arguably subject to § 7 or § 8 of the [National Labor Relations] Act, the States as well as the federal courts must defer to the exclusive competence of the National Labor Relations Board if the danger of state interference with national policy is to be averted]." 359 U.S. at 249, 79 S.Ct. at 780. The purpose of the *Garmon* rule, thus, is to ensure that disputes within the Board's expertise are first committed to it. *Brown*, supra, 104 S.Ct. at 3186. See also, *Jones v. Truck Drivers Local Union No. 299*, 838 F.2d 856, 874 (6th Cir.1988) (Merritt, J., concurring in part). However, the Supreme Court made clear in *Vaca v. Sipes*, 386 U.S. 171, 87 S.Ct. 903, 17 L.Ed.2d 842 (1967), that the NLRB has no special expertise over claims of a union's breach of its duty of fair representation, and thus, *Garmon* preemption is inapplicable to this class of cases. 87 S.Ct. at 912–14.

*Bredesen v. Detroit Fed'n of Musicians, Loc. No. 5, Affiliated with Am. Fed'n of Musicians*, 165 F. Supp. 2d 647, 653 n.11 (E.D. Mich. 2001).

Nonetheless, claims that fall within a union's duty of fair representation are preempted. *Maynard v. Revere Copper Products, Inc.* 773 F.2d 733, 735 (6th Cir. 1985). But here, there can be no duty of fair representation claim because Defendant owed Plaintiff no duty. The duty of fair representation is owed only to members of a collective bargaining unit. *McTighe v. Mechanics Educ. Soc. of Am., Loc. 19, AFL-CIO*, 772 F.2d 210, 213 (6th Cir. 1985). Plaintiff was never an employee within the bargaining unit Defendant represents, therefore it never owed her a duty of fair representation, and that duty cannot then preempt her claim.

Defendant also points to Supreme Court precedent, but the present case is distinguishable. The Court recognizes the Supreme Court has held a union, operating a hiring hall, which denies employment through unfair, irrelevant, or invidious practices violates its duty of fair representation. *Breininger v. Sheet Metal Workers Int'l Ass'n Loc. Union No. 6*, 493 U.S. 67, 78 n.3 (1989). But again that case addresses the hiring hall's treatment of employees within the bargaining unit which it refers out to other employers, *see id.*, rather than here where Defendant's

alleged discriminatory conduct prevented Plaintiff from ever joining the bargaining unit. The duty of fair representation only preempts claims where it exists, and at this stage Defendant has not shown it had a duty to fairly represent Plaintiff, as a nonemployee. Since Defendant has not shown it had such a duty to Plaintiff, that duty cannot preempt Plaintiff's claim.

## CONCLUSION

For the foregoing reasons, good cause appearing, it is

ORDERED that Defendants' Motion to Dismiss (Doc. 13), be, and the same hereby is, DENIED.

                                                     s/ *James R. Knepp II*
                                                  UNITED STATES DISTRICT JUDGE